UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPRINGUARD TECHNOLOGY GROUP INC., a Massachusetts Corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES PATENT AND TRADEMARK OFFICE; JON W. DUDAS, in his official capacity as Director of the United States Patent and Trademark Office,<br><br>Defendants. | Case No.<br><br>**08 CA 12119 RWZ**<br><br>MAGISTRATE JUDGE____ |

## COMPLAINT

Plaintiff, SPRINGUARD TECHNOLOGY GROUP INC. ("SprinGuard"), states for its Complaint against Defendants, the United States Patent and Trademark Office ("PTO") and Jon W. Dudas ("Dudas"), as follows:

### NATURE OF ACTION

1. This is an action seeking judicial review of decisions of the Director of the PTO denying SprinGuard's petitions to reinstate United States Patent No. 5,862,529, which expired when SprinGuard's lawyer failed to pay a required patent maintenance fee at the time it was due. Under 35 U.S.C. § 41(c)(l), SprinGuard was entitled to reinstatement of its patent because it demonstrated that the delay in the payment of the maintenance fee was "unavoidable." In rejecting SprinGuard's petitions, the PTO concluded that SprinGuard must suffer the loss of its patent even though it had hired a licensed attorney registered to practice before the PTO to ensure that its patent remained in force. The PTO held SprinGuard responsible for its attorney's failure to pay the required maintenance fee even though neither the lawyer nor the PTO ever

informed SprinGuard of the need to pay the fee. Amazingly, the PTO held that SprinGuard was bound by the actions of its lawyer at a time when the PTO itself had removed the lawyer from the register of attorneys eligible to practice before it, failed to notify SprinGuard of that fact, and continued to send notices to the lawyer contrary to its own procedures. Notwithstanding the fact that SprinGuard never was able—despite exhaustive efforts—to contact its lawyer after learning of the patent expiration, the PTO held that SprinGuard could prevail only if it offered evidence regarding the fee docketing system used by the lawyer and a statement from the lawyer's physician describing the nature of his illness during the relevant period.

2.  The PTO's decisions were arbitrary and capricious, an abuse of discretion, contrary to law, and in excess of statutory authority. Accordingly, they should be set aside under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA").

3.  In the alternative, SprinGuard petitions for a writ of mandamus to compel the Director to reinstate United States Patent No. 5,862,529.

**PARTIES**

4.  Plaintiff, SprinGuard Technology Group Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and has a principal place of business at 297 Heath's Bridge Road, Concord, Massachusetts 01742.

5.  SprinGuard owns all right, title, and interest in and to United States Patent No. 5,862,529 ("the '529 Patent"), entitled "Device for Protecting Face and Eyes Against Projectile Impact," that issued on January 26, 1999 from an application filed on January 23, 1996.

6.  Defendant, the United States Patent and Trademark Office, is a federal agency within the United States Department of Commerce located in Alexandria, Virginia.

7.     Defendant, Jon W. Dudas, is the Under Secretary of Commerce for Intellectual Property and Director of the PTO. Dudas is a legal resident of the Eastern District of Virginia and is named in his official capacity.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) over SprinGuard's federal claims under the APA, 28 U.S.C. § 1361, the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(e).

10.    SprinGuard has standing to maintain this action pursuant to the APA as an entity that has suffered a legal wrong and that has been adversely affected by final agency action, as complained of herein.

11.    There exists an actual, justiciable case or controversy between SprinGuard and the PTO as to which SprinGuard requires (i) a declaration of rights by this Court and (ii) injunctive relief against the PTO, including prohibiting the PTO from continuing to deny the '529 Patent's reinstatement, which is causing SprinGuard irreparable injury.

## STATEMENT OF FACTS

### Background

12.    This action is to compel the PTO to reinstate a patent that lapsed because a maintenance fee was not paid where the failure to pay the fee was unavoidable. The PTO's decisions denying SprinGuard's petitions to reinstate the patent were arbitrary and capricious, an abuse of discretion, contrary to law, and in excess of statutory authority.

13.    The PTO requires that three separate maintenance fees be paid on an issued patent. The first is due between the third and fourth years after issuance of the patent ("First Maintenance Fee"). The second is due between the seventh and eighth years after issuance of

3

the patent ("Second Maintenance Fee"). The third is due between the eleventh and twelfth years after issuance of the patent ("Third Maintenance Fee").

14. Congress has provided that late payment of patent maintenance fees is accepted where the delay is shown to have been "unavoidable":

> The Director may accept the payment of any maintenance fee required by subsection (b) of this section which is made within twenty-four months after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional, <u>or at any time after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unavoidable</u>. The Director may require the payment of a surcharge as a condition of accepting payment of any maintenance fee after the six-month grace period. If the Director accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired at the end of the grace period.

35 U.S.C. § 41(c)(1) (emphasis added).

15. A PTO regulation further provides:

> Any petition to accept an unavoidably delayed payment of a maintenance fee filed under paragraph (a) of this section must include:
>
> (1) The required maintenance fee set forth in § 1.20 (e) through (g);
>
> (2) The surcharge set forth in § 1.20(i)(1); and
>
> (3) A showing that the delay was unavoidable <u>since reasonable care was taken to ensure that the maintenance fee would be paid timely</u> and that the petition was filed promptly after the patentee was notified thereof, or otherwise became aware of, the expiration of the patent. <u>The showing must enumerate the steps taken to ensure timely payment of the maintenance fee, the date and manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly.</u>

37 C.F.R. § 1.378(b) (emphasis added).

16. To determine if delay was unavoidable, the PTO must use a reasonably prudent person standard:

> The word 'unavoidable' . . . is applicable to ordinary human affairs, and requires no more or greater care or diligence than is generally used and observed by prudent and careful men in relation to their most important business. It permits them, in the exercise of this care, to rely upon the ordinary and trustworthy agencies of mail and telegraph, worthy and reliable employees, and such other means and instrumentalities as are usually

4

employed in such important business. <u>If unexpectedly, or through the unforeseen fault or imperfection of these agencies and instrumentalities, there occurs a failure, it may properly be said to be unavoidable,</u> all other conditions of promptness in its ratification being present.

*In re Mattullath,* 38 App. D.C. 497, 514–15 (D.C. Cir. 1912) (internal quotation marks omitted, emphasis added); *see also Winkler* v. *Ladd,* 221 F. Supp. 550, 552 (D.D.C. 1963), *aff'd,* 143 USPQ 172 (D.C. Cir. 1964).

**The '529 Patent**

17. On January 26, 1999, the PTO issued the '529 Patent, entitled "Device for Protecting Face and Eyes Against Projectile Impact," to inventors Donald E. Moodie and Paul F. Vinger. (Attached as Exhibit A.)

18. SprinGuard is the owner by assignment of the '529 Patent and owns all right, title, and interest in it.

19. SprinGuard retained Attorney Richard A. Jordan ("Jordan") to file a patent application on the subject matter that became the '529 Patent. The application was filed on January 23, 1996.

20. Jordan prosecuted the application which became the '529 Patent on behalf of SprinGuard.

21. A "Declaration and Power of Attorney" filed by the inventors on April 1, 1996 stated:

> [We] hereby appoint Richard A. Jordan, Reg. No. 27,807 my attorney, with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent and to transact all business in the Patent and Trademark Office connected therewith. Please direct all telephone calls to Richard A. Jordan at (617) 431-1357. Please address all correspondence to Richard A. Jordan, at 9 Standish Road, Wellesley, MA 02181-5317.

22. The correspondence address for Jordan was changed in a June 26, 1997 filing to:

5

Richard A. Jordan
P.O. Box 81363
Wellesley Hills, MA 02181-00004

23. Each Official Action was mailed by the PTO to Jordan and each response was filed by Jordan.

24. The First Maintenance Fee for the '529 Patent was due during the period ending on January 26, 2003.

25. The '529 Patent expired as of January 27, 2003, for failure to pay the First Maintenance Fee.

26. The PTO never sent maintenance fee reminders to SprinGuard to let it know that the First Maintenance Fee payment had not been received and was due. Upon information and belief, a letter was sent to Attorney Jordan on August 13, 2002, indicating that the First Maintenance Fee was past due.

27. The PTO never sent any notice to SprinGuard to let it know that the patent had expired for failure to pay the First Maintenance Fee. Upon information and belief, a letter was sent to Attorney Jordan on February 26, 2003, indicating that the patent had expired.

28. Neither SprinGuard nor the inventors received from Jordan a copy of the patent informing them that maintenance fees were due or any other communication so informing them. SprinGuard and the inventors received no communication from Jordan informing them that the '529 Patent had expired for failure to pay the First Maintenance Fee. The '529 Patent was the first and only U.S. Patent the inventors had filed for and obtained. The inventors had no knowledge of the requirement to pay maintenance fees.

29. SprinGuard and the inventors learned of the patent's expiration on or about November 22, 2006, during a due diligence review of the patent by a third-party licensee.

**Actions By SprinGuard And The Inventors To Investigate What Happened**

30.  Upon learning of the expiration of the patent, one of the inventors, Donald Moodie, made numerous attempts to locate Jordan. He called all of the telephone numbers he could identify for Jordan, *i.e.*, those in his rolodex, in the Wellesley telephone directory and on the Attorney's Register with the PTO. The numbers he called had either been disconnected or were not answered.

31.  SprinGuard retained the services of Robert Jackson and Associates, Inc., private investigators, to find Jordan. The private investigators found that Jordan still resided at the correspondence address given for the '529 Patent and had the identified telephone number. The inventors continued to call that telephone number and did not receive an answer. They attempted to send a letter to Jordan by facsimile, but the facsimile number was disconnected. They sent by registered mail a letter to Jordan at his confirmed address, which was not delivered as there was no answer at the door. They sent representatives to Jordan's home and received no answer at the door even though there were two cars in the driveway. One of those cars was confirmed to be registered to Jordan.

32.  SprinGuard and the inventors were unable to contact Jordan from the time they learned of the expiration of the '529 Patent through the time of Jordan's death.

33.  Since it became aware that the '529 Patent expired, SprinGuard has tendered to the PTO all maintenance fees owed. It submitted the First Maintenance Fee with the applicable late filing fee less than three weeks after discovering that the '529 Patent had expired.

**Jordan's Undisclosed Misconduct That Was Subsequently Discovered**

34.  On December 9, 2002, Jordan's name was removed from the Register of Patent Attorneys and Agents. (*See* Exhibit B.) The Notice stated:

7

> Pursuant to the provisions of 37 CFR 10.11(b), a letter was directed on May 13, 2002 to the last post office address furnished to the Office of Enrollment and Discipline by each of the persons whose name and address appear on the following list. With respect to some of the letters, no reply was received within the period set therein. Other letters were returned by the U.S. Postal Service with notations to the effect that the addressee was unknown, or had moved and left no forwarding address, or the forwarding instructions had expired.
>
> Accordingly, the names of the following persons have been removed on December 9, 2002 from the Register of Patent Attorneys and Agents.

35. Jordan's name did not reappear on the Register of Patent Attorneys and Agents until March 23, 2004. (*See* Exhibit C.)

36. During the period for which Jordan's name was removed from the Register of Patent Attorneys and Agents, the First Maintenance Fee became due and the '529 Patent expired for failure to pay the First Maintenance Fee.

37. Because Jordan's name was removed from the Register of Patent Attorneys and Agents on December 9, 2002, Jordan could no longer perform his duties as counsel for SprinGuard, including his obligation to pay the First Maintenance Fee, which had to be paid by January 26, 2003.

38. Jordan did not inform SprinGuard or the inventors that his name had been removed from the Register of Patent Attorneys and Agents.

39. During the period for which Jordan's name was removed from the Register of Patent Attorneys and Agents, the PTO did not inform SprinGuard or the inventors of Jordan's status or send any notice relating to the '529 Patent to them.

40. Indeed, SprinGuard did not learn of the removal of Jordan's name from the Register of Patent Attorneys and Agents until 2008.

41. The PTO's Manual of Patent Examining Procedure ("MPEP") provides that the PTO "does not communicate with attorneys or agents who have been suspended or excluded from practice." MPEP § 407. To the contrary, the MPEP states that the PTO will communicate with an inventor in these circumstances. *Id.* However, the PTO did not follow this procedure when (upon information and belief) it mailed a notice to Jordan indicating that the patent had expired during the period in which Jordan was removed from the Register of Patent Attorneys and Agents.

42. Jordan was suspended from practice by the Massachusetts Board of Bar Overseers on October 5, 2006 and later disbarred.

43. The IRS issued a tax lien against Jordan in the amount of $13,788.54 in September 2006 for the tax period ending June 30, 2003.

**The First Petition To Reinstate**

44. On December 8, 2006, promptly after becoming aware that the First Maintenance Fee had not been paid, SprinGuard filed a petition requesting that the PTO accept its unavoidably delayed maintenance fee payment and reinstate the '529 Patent (herein "First Petition"). (Attached as Exhibit D.)

45. The First Petition and accompanying affidavits demonstrated, as required by statute and case law, that the delay in paying the maintenance fee was unavoidable and that SprinGuard had exercised reasonable care by hiring a patent attorney registered with the PTO to ensure that the patent remained in force. The First Petition and accompanying affidavits also detailed how the inventors attempted to contact Jordan, to no avail, after learning that the fee had not been paid.

46. This First Petition was dismissed by the PTO on March 12, 2007. *See* Decision on Petition (attached as Exhibit E). The Decision stated that a showing of "unavoidable" delay

9

"requires a showing of the steps taken by the responsible party to ensure the timely payment of the first maintenance fee for this patent." *Id.* at 3. Here, the PTO required "a statement from petitioners' former patent attorney, Richard A. Jordan ... as to why action was not taken to timely submit the required maintenance fee while the patent was under that agent's control." *Id.* at 3-4. The Decision stated that a showing that Jordan had docketed the maintenance fee payment into a reliable docket system was required. *Id.* at 6. Evidence regarding the docketing system used by Jordan was requested. *Id.* at 7. The Decision further stated that an assertion that Jordan had been ill "must be supported by a statement from the practitioner's treating physician, and such statement must provide the nature of petitioner's incapacitation during the above-mentioned period." *Id.* at 4-5.

47.     The Decision asserted that an applicant is bound by the consequences of the actions or inactions taken by its chosen counsel. *Id.* at 5. It indicated "that any errors or omissions of Jordan did not relieve petitioner from his obligation to exercise diligence with respect to this patent." *Id.* at 6. Absent any separate showing of diligence, "the actions or inactions of the registered practitioners will remain imputed to petitioners." *Id.* at 6-7. The Decision asserted that a "lack of proper communication between a patent holder and a registered representative as to who bore the responsibility for payment of a maintenance fee does not constitute unavoidable delay." *Id.* at 4; *see also id.* at 5.

48.     As noted above, at the end of the period when the First Maintenance Fee became due and through the time the '529 Patent expired, and unbeknownst to SprinGuard, Jordan's name had been removed from the Register of Patent Attorneys and Agents and, therefore, Jordan was not a registered representative of SprinGuard.

10

**Request For Reconsideration**

49. SprinGuard filed a Request for Reconsideration on May 11, 2007. *See* Request for Reconsideration Under 37 CFR §1.378(e) (attached as Exhibit F).

50. The Request for Reconsideration demonstrated that SprinGuard exercised all reasonable care by obtaining the assistance of a licensed attorney registered to practice before the PTO. It had no prior reason to doubt Jordan's competency, as the patent had been successfully obtained with his assistance.

51. The facts and evidence submitted by SprinGuard further showed that Jordan, at the time the '529 Patent went abandoned and the petition for reinstatement was filed, had engaged in grossly negligent behavior and had concealed his misconduct from SprinGuard. *See id.*, Exhibits D-F of Request.

52. The Request for Reconsideration further noted that "[i]t is absolutely inappropriate for the USPTO to demand that the petitioners investigate the docketing system and all personnel employed by their licensed patent attorney to ensure that it is sufficient to ensure the timely payment of maintenance fees." *Id.* at 2.

53. It was further demonstrated that SprinGuard could not have foreseen the change in circumstances and reliability of Jordan, ultimately resulting in his suspension from practice. *See id.* at 3-5. SprinGuard thus exercised all reasonable care to ensure that the maintenance fee was timely paid by hiring Jordan to take all necessary actions relating to the patent. It relied upon Jordan to have a reliable docketing system to ensure that all maintenance fees were timely paid. Finally, the Request noted that SprinGuard promptly obtained a second attorney to file the First Petition. *Id.* at 5.

11

**The Decision By The PTO On The Request For Reconsideration**

54. On August 10, 2007, the PTO issued a decision denying the Request for Reconsideration. (Attached as Exhibit G.)

55. The PTO asserted that SprinGuard had "not provided the requisite showing of the steps taken by the responsible party to ensure the timely payment of the first maintenance fee. In this regard, while the office acknowledges petitioners' efforts to contact their former attorney, the failure of that attorney to provide a showing of the steps taken to ensure timely payment of the maintenance fee does not constitute unavoidable delay." Decision at 5. Despite SprinGuard's inability to contact Jordan despite extensive efforts, the PTO again required SprinGuard to show that Jordan "had docketed the patent for payment of the maintenance fee." *Id.* at 6.

56. Without acknowledging Jordan's gross misconduct and concealment from SprinGuard, the PTO further asserted that SprinGuard had "made a conscious decision to obtain the services of the chosen representative in payment of the maintenance fees for this patent, and therefore must be held accountable for his actions or lack thereof, before the Office." *Id.* at 6. Moreover, as noted above, the PTO had removed Jordan's name from the Register of Patent Attorneys and Agents and had not notified SprinGuard or the inventors of Jordan's removal during the period when the payment of the First Maintenance Fee became due.

57. The PTO also again erroneously framed the issue as one of "delay resulting from a lack of proper communication between a patent holder and a registered representative as to who bore the responsibility for payment of a maintenance fee." *Id.* at 6. But there can be no dispute that Jordan "bore the responsibility for payment of a maintenance fee." The PTO also erroneously asserted that SprinGuard had not shown "that Jordan was under any obligation, or had any agreement, to track and pay the maintenance fee for the present patent." *Id.* at 7.

**The Second Petition By SprinGuard**

58.     On December 18, 2007, SprinGuard filed a Petition To Invoke Supervisory Authority of the Director Under 37 CFR § 1.181(a)(3), requesting that the Director accept the delayed maintenance fee payment ("Second Petition"). (Attached as Exhibit H.)

59.     In the Second Petition, SprinGuard requested that the Director intervene on its behalf to provide an adequate remedy. Second Petition at 2. SprinGuard explained that, like most small-entity inventors, it had "relied fully upon the professional skills and experience of Attorney Richard Jordan at all stages of drafting, prosecuting, issuance, and post-issuance of the patent in question, and entrusted him to take all steps necessary to keep the patent in force." *Id.* at 3. SprinGuard also indicated that it had "relied on the fact that as a 'registered' patent attorney and licensed attorney, Attorney Jordan would have taken all steps necessary in the procurement and maintenance of their patent." *Id.* at 4. It also noted that the level of proof required by the PTO was "insurmountable ... where the [a]ttorney refuses to cooperate or even to be contacted." *Id.* at 3.

60.     The Second Petition also explained that the inventors fell "squarely within the circumstances where clients should *not* be imputed with the consequences of errors ... by their registered patent attorney." *Id.* at 10. SprinGuard noted that Jordan had concealed his conduct, had been grossly negligent, and had been performing a purely ministerial function. *Id.* at 4-10.

**The Decision By The PTO On The Second Petition**

61.     On March 17, 2008, the PTO denied the Second Petition "as inappropriate because [] 37 CFR 1.3778(e) expressly precludes further consideration of the matter by the Director." Decision at 3 (emphasis removed) (attached as Exhibit I).

## COUNT I

### (Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*)

62. SprinGuard repeats and realleges Paragraphs 1 through 61 above as though set forth fully herein.

63. Defendants' decisions denying SprinGuard's petitions to reinstate the '529 Patent should be set aside because they were arbitrary and capricious, an abuse of discretion, contrary to law, and in excess of statutory authority. Among other things, the PTO failed to apply the proper legal standard; failed to consider all of the relevant factors, facts, and circumstances; imposed unreasonable evidentiary requirements; reached conclusions that are not supported by substantial evidence or fair or reasonable inferences or analysis; concluded, contrary to law, that SprinGuard was bound by Jordan's misconduct; failed adequately to explain or justify deviations from its own prior guidance and precedent; and violated its own procedures.

64. SprinGuard has exhausted its administrative remedies.

65. SprinGuard is entitled to reinstatement of its patent pursuant to 35 U.S.C. § 41(c)(l).

## COUNT II

### (Petition for Writ of Mandamus)

66. SprinGuard repeats and realleges Paragraphs 1 through 65 above as though set forth fully herein.

67. Defendants had a duty to take all the facts and circumstances into consideration in reviewing SprinGuard's petitions and failed to do so.

68. Defendants had a duty to apply their own rules in reviewing SprinGuard's petitions and failed to do so.

14

69.     SprinGuard will have no adequate alternative relief if the relief sought under Count I is not granted.

### RELIEF REQUESTED

**WHEREFORE,** Plaintiff, SPRINGUARD TECHNOLOGY GROUP INC., prays for relief from this Honorable Court, as follows:

A.      Issuance of a declaratory judgment that the PTO's denials of SprinGuard's petitions were arbitrary, capricious, an abuse of discretion or otherwise contrary to law, and in excess of statutory authority under 5 U.S.C. § 706(2);

B.      Entry of an order requiring the PTO immediately (i) to withdraw its denials of SprinGuard's petitions and (ii) to accept payment of the First Maintenance Fee and Second Maintenance Fee and reinstate the '529 Patent;

C.      Issuance of a writ of mandamus to compel the Director to grant SprinGuard's petitions to accept payment of the unavoidably delayed maintenance fee, the required maintenance fee, the surcharge (all submitted with SprinGuard's First and Second Petitions) and to accept SprinGuard's showing, made in its petitions, that the delay was unavoidable; and

D.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Donald R. Steinberg

Donald R. Steinberg, BBO #553699
Donna M. Meuth, BBO #645598
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
(617) 526-5000 (fax)

Dated: December 22, 2008             *Attorneys for Plaintiff SprinGuard Technology Group Inc.*

15