UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————

)
SPRINGUARD TECHNOLOGY                )
GROUP INC.,                          )
                                     )
              Plaintiff,             )
                                     )
v.                                   )        C.A. No. 08-12119-RWZ
                                     )
UNITED STATES PATENT                 )
AND TRADEMARK OFFICE; and            )
JOHN J. DOLL in his official capacity as )
Acting Director of the U.S. Patent and   )
Trademark Office,                    )
                                     )
              Defendants.            )
———————————————————  )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

MICHAEL J. SULLIVAN
United States Attorney

By:  Christine J. Wichers
     Assistant U.S. Attorney
     John J. Moakley U.S. Courthouse
     1 Courthouse Way, Suite 9200
     Boston, MA 02210
     (617) 748-3278

     *Of Counsel*:
     Raymond Chen
     Solicitor, U.S. Patent and Trademark Office

     Benjamin D. M. Wood
     Mary Kelly
     Associate Solicitors

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    SprinGuard's Failure to Pay the First Maintenance Fee . . . . . . . . . . . . . . . . . . . . 1

    2.    SprinGuard's Petition Claiming Its Four-Year Delay in Paying the Maintenance Fee Was Unavoidable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    3.    USPTO's Dismissal of SprinGuard's Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    4.    SprinGuard's Request for Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    5.    USPTO's Denial of SprinGuard's Request for Reconsideration . . . . . . . . . . . . . 5

    6.    SprinGuard's Improper Second Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    1.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Patent Maintenance Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Revival of Expired Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    2.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    3.    The USPTO Did Not Act Arbitrarily or Capriciously in Rejecting SprinGuard's Argument That Its Four-Year Delay in Paying Its First Maintenance Fee Was Unavoidable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.    SprinGuard Failed to Enumerate Any Steps That It or Its Counsel Took to Ensure Timely Payment of the First Maintenance Fee . . . . . . . . . . . . . . 10

        B.    Attorney Jordan's Negligence Is Imputed to SprinGuard . . . . . . . . . . . 11

        C.    The Non-Receipt of Maintenance Fee Reminders, Which Are Merely a USPTO Courtesy, Does Not Constitute Unavoidable Delay . . . . . . . . . . 14

    4.    SprinGuard's New Argument, That the USPTO Improperly Sent a Patent Expiration Notice to Jordan After His Name Was Removed from the List of Registered Patent Attorneys, Should Not Be Considered, and in Any Event Is Unavailing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    5.    SprinGuard Cannot Demonstrate Entitlement to the Extraordinary Remedy of Mandamus Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## INTRODUCTION

Defendants United States Patent and Trademark Office and John Doll, in his official capacity as Acting Director of the United States Patent and Trademark Office (together "USPTO"), submit this memorandum in support of their motion to dismiss the Complaint for failure to state a claim or, in the alternative, for summary judgment.  It is undisputed that SpringGuard failed to pay a required maintenance fee on its patent until more than four years after it became due.  The USPTO rejected SpringGuard's argument that its delay was "unavoidable" under 35 U.S.C. § 41(c)(1) and 37 C.F.R. § 1.378(b).  SpringGuard claims the USPTO's discretionary rejection of its "unavoidable delay" argument, and therefore its refusal to revive SpringGuard's long-expired patent, was arbitrary and capricious.  It seeks relief under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* (the "APA"), or the mandamus statute, 28 U.S.C. § 1361.  As explained herein, SpringGuard's APA claim should be dismissed because the USPTO's decision was neither arbitrary nor capricious.  SpringGuard's mandamus claim should be dismissed because (1) it has an available avenue of relief (specifically, the APA) and (2) mandamus jurisdiction does not lie where, as here, the agency's duty was discretionary rather than ministerial.

## UNDISPUTED FACTS

### 1.    SpringGuard's Failure to Pay the First Maintenance Fee

Plaintiff SpringGuard is the assignee of U.S. Patent No. 5,862,529 ("the '529 patent"), entitled "Device for Protecting Face and Eyes Against Projectile Impact."  Complaint ¶ 5 and Exhibit A attached thereto.  SpringGuard retained Attorney Richard A. Jordan ("Jordan") to draft and file the application that issued as the '529 patent.  Complaint ¶ 19.  Jordan filed the

application on January 23, 1996, and represented SpringGuard at the USPTO in connection with

the application.  The patent issued three years later, on January 26, 1999.  <u>Id.</u> ¶¶ 19-20; A14.[1]

The first maintenance fee came due on July 26, 2002, three and a half years later.  Complaint

¶ 19; <u>see</u> 37 C.F.R. § 1.362(d)(1).

Neither SpringGuard nor Jordan paid the first maintenance fee.  Consequently, at the end

of the six-month grace period (January 26, 2003), the '529 patent expired.  Complaint ¶ 25.

Almost four years after expiration, on or about November 22, 2006, SpringGuard learned from its

licensee who had conducted a routine due diligence review of the '529 patent that the patent had

expired.  <u>Id.</u> ¶ 29.

### 2.     SpringGuard's Petition Claiming Its Four-Year Delay in Paying the Maintenance Fee Was Unavoidable

On December 8, 2006, SpringGuard filed with the USPTO a "Petition to Accept

Unavoidably Delayed Payment of Maintenance Fee in an Expired Patent" pursuant to 37 C.F.R.

§ 1.378(b).  <u>Id.</u> ¶ 44 & Exhibit D attached thereto; A301-05.  SpringGuard argued that the failure

to pay the first maintenance fee was unavoidable because the attorney it had hired to pay the

maintenance fee, Jordan, "became gravely ill" and "failed to notify either the USPTO or Patentee

of . . . the need to replace him with another Maintenance Fee Correspondence Address."

Complaint, Ex. D at 5; A304.  SpringGuard also asserted that "no notices issued by the USPTO

were received, to Patentee's best knowledge, by Attorney Richard A. Jordan or Patentee."  <u>Id.</u>

Both named inventors of the '529 patent, Donald E. Moodie and Paul F. Vinger, filed

identical affidavits in support of SpringGuard's petition.  Complaint, Ex. D at 12-19; A294-97,

---

[1] References to the page-numbered administrative record, filed with this motion, are designated
"A___."

2

311-14.  In their affidavits the inventors alleged that Jordan had been ill for a prolonged period

of time, and surmised that his prolonged illness explained all of the following:

> (1) our inability to reach Attorney Jordan at this time, (2) why patentee has
> received no correspondence from Attorney Jordan since the issuance of the above-
> identified patent on January 26, 1999, (3) why the Maintenance Fee Address and
> Attorney Registrar Address for Attorney Jordan are no longer valid and were
> probably not valid at the time that the fourth year maintenance fee was due in July
> 2002, which caused patentee not to receive[] any of the correspondence from the
> USPTO pertaining to such maintenance fee obligation, and (4) why patentee never
> directly received any reminder notice or patent expiration notice from the USPTO.

Complaint, Ex. D at 14 & 18 (¶ 9); A296 & A313 (¶ 9).  The inventors admitted that a publicly

available USPTO database indicated that the '529 patent expired on January 27, 2003 for failure

to pay the first maintenance fee.  Complaint, Ex. D at 13 & 17 (¶ 4); A295 & A312 (¶ 4).  The

inventors also admitted that the USPTO had mailed a maintenance fee reminder to Jordan on

August 13, 2002 (within the six-month grace period), indicating that the first maintenance fee

was past due, and had mailed a Notice of Expired Patent to Jordan on February 26, 2003, shortly

after the patent expired.  Complaint, Ex. D at 13 & 17 (¶¶ 3, 5); A295 & A312 (¶¶ 3, 5).

### 3.    USPTO's Dismissal of SprinGuard's Petition

The USPTO dismissed SprinGuard's petition on March 12, 2007.  Complaint ¶ 46 &

Exhibit E attached thereto; A320-28.  The USPTO explained that "an adequate showing that the

delay in payment of the maintenance fee at issue was 'unavoidable' . . . requires a showing of the

steps taken by the responsible party to ensure the timely payment of the first maintenance fee for

this payment."  Complaint, Ex. E at 3; A322.  The USPTO also explained that the burden to

make this showing was on the patent owner.  Id.  Since, according to SprinGuard, Jordan was the

party responsible for paying the maintenance fee on the '529 patent, "any showing of

unavoidable delay must include a statement from [Jordan], as well as any other attorney(s) of

3

record during the period that payment of the maintenance fee was delayed, as to why action was not taken to timely submit the required maintenance fee while the patent was under that agent's control." Complaint, Ex. E at 3-4; A322-23. The USPTO explained that SprinGuard's reliance on counsel "does not provide … a showing of unavoidable delay …. Rather, reliance merely shifts the focus of the inquiry from [SprinGuard] to whether [Jordan] acted reasonably and prudently…. [SprinGuard is] bound by any errors that may have been committed by counsel…. [D]elay caused by the mistakes or negligence of [SpringGuard's] voluntarily chosen representative does not constitute unavoidable delay …." Complaint, Ex. E at 5; A324.

The USPTO further noted that "delay resulting from a lack of proper communication between a patent holder and a registered representative as to who bore the responsibility for payment of a maintenance fee does not constitute unavoidable delay." Complaint, Ex. E at 4; A323. Further, "while physical or mental incapacitation can be a cause of delay, a showing of 'unavoidable' delay based upon incapacitation" required SprinGuard to provide evidence that the nature and degree of Jordan's incapacitation rendered him unable to conduct business from January 26, 2003 (the date the patent expired) through December 8, 2006 (the date SprinGuard filed its petition with the USPTO). Complaint, Ex. E at 4; A323. Finally, the USPTO noted that "lack of knowledge of the requirement to pay a maintenance fee and/or the failure to receive the Maintenance Fee Reminder will not shift the burden of monitoring the time for paying a maintenance fee from the patentee to the Office," in part because the USPTO "has no duty to notify patentees of the requirement to pay maintenance fees or to notify patentees when the maintenance fees are due." Complaint, Ex. E at 7; A326.

4

### 4. SpringGuard's Request for Reconsideration

On May 11, 2007, SpringGuard filed a request for reconsideration under 37 C.F.R. §
1.137(b). See Complaint ¶ 49 & Exhibit F attached thereto; A334-55. SpringGuard again argued
that its four-year delay in paying its maintenance fee was unavoidable because (1) though Jordan
had responsibility for paying maintenance fees, he failed to do so; (2) SpringGuard did not receive
any notice from either the USPTO or Jordan regarding the unpaid maintenance fees; and (3)
Jordan had a "serious problem" and/or behaved "unprofessional[ly] and unethical[ly]" in a way
that SpringGuard could not have anticipated. Complaint, Exhibit F at 7-9; A336-38.

### 5. USPTO's Denial of SpringGuard's Request for Reconsideration

The USPTO denied SpringGuard's request for reconsideration in a final decision rendered
August 10, 2007. Complaint ¶ 54 & Exhibit G attached thereto; A360-67. The USPTO again
noted SpringGuard's failure to provide the requisite showing of the steps taken by the responsible
party to ensure the timely payment of the first maintenance fee. It stated that, "while the office
acknowledges [SpringGuard's] efforts to contact [Jordan], the failure of that attorney to provide a
showing of the steps taken to ensure timely payment of the maintenance fee does not constitute
unavoidable delay." Complaint, Ex. G at 5; A364. The USPTO also clarified that it did not
require SpringGuard to evaluate the sufficiency of Jordan's docketing system, "but merely to
provide a showing that someone, counsel or otherwise, had taken the steps of a reasonable and
prudent person in respect to his or her most important business, to track and timely pay the
maintenance fee. If [SpringGuard] assert[s] that [it] relied upon counsel, then [it] must show[]
that counsel had docketed the patent for payment of the maintenance fee." Complaint, Ex. G at
5-6; A364-65. The USPTO also reiterated that neither SpringGuard's hiring of Jordan *per se*, nor

5

the lack of communication between SprinGuard and Jordan as to who was responsible for paying

the maintenance fee, nor Jordan's negligence in failing to pay the maintenance fee, constituted

unavoidable delay.  Complaint, Ex. G at 6-7; A365-66.

**6.     SprinGuard's Improper Second Petition**

After the USPTO denied SprinGuard's request for reconsideration, SprinGuard filed a

second petition, entitled "Petition to Invoke Supervisory Authority of the Director Under 27

C.F.R. § 1.181(a)(3)."  Complaint ¶ 58 & Exhibit H attached thereto; A368-83.  The USPTO

denied the second petition as inappropriate because SprinGuard had exhausted its administrative

remedies and 37 C.F.R. § 1378(e) expressly precluded further review.  See Complaint ¶ 61 &

Exhibit I attached thereto; A394-96.

**ARGUMENT**

**1.     Background**

**A.     Patent Maintenance Fees**

Patents are generally enforceable from the date the USPTO grants the patent until twenty

years after the date the application was filed.  See 35 U.S.C. § 154.  Since 1980, Congress has

required that patent owners pay periodic "maintenance fees" to keep the patent in force during

the full patent term.  See id.  The maintenance fee schedule is set forth in Section 41(b) of the

Patent Act, 35 U.S.C. § 41(b), which requires that maintenance fees be paid 3.5 years, 7.5 years,

and 11.5 years after the patent issues.  See id.  But if a patent owner misses a maintenance fee

deadline, it still has an additional statutory six-month "grace period" in which to pay the fee.

See id.

Because the USPTO receives no taxpayer funding, it is supported by user fees, including maintenance fees, paid by patent applicants and owners.  See Figueroa v. United States, 66 Fed. Cl. 139, 141 (2005), aff'd, 466 F.3d 1023 (Fed. Cir. 2006), cert. denied, 127 S. Ct. 2248 (2007). To alleviate the potential impact on small businesses and individual inventors, the maintenance-fee system was designed so that patent owners could defer payment until the patent begins to return revenue to its owner.  See Laerdal Med. Corp. v. Ambu, Inc., 877 F. Supp. 255, 256 & n.3 (D. Md. 1995) (citing H.R. Rep. No. 1307(I), 96th Cong., 2d Sess., 4-9 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6463-68).  After the patent issues, the owner can assess the value of the patent before deciding whether to pay the maintenance fees.  If it turns out that a patent is of little or no commercial value, the patent owner may choose to let the patent expire by not paying the fees.  See 35 U.S.C. § 41(c).  Such expiration by operation of law is a common occurrence, and in most cases simply reflects the patent holder's judgment that the patent was not worth maintaining.  See H.R. Rep. No. 1307(I), 96th Cong., 2d Sess., 4-9 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6464.

### B.    Revival of Expired Patents

Congress has delegated to the USPTO the discretion to revive an expired patent in two situations.  First, the USPTO can accept late payments of any maintenance fee for up to two years after the patent expires if the delay in payment was "unintentional."  35 U.S.C. § 41(c)(1). A patentee seeking to show "unintentional" delay during these 24 months need only state that the delay was unintentional throughout the entire relevant period, and pay the appropriate surcharge.

See 37 C.F.R. § 1.378(c); USPTO Manual of Patent Examining Procedure ("MPEP") § 2590 (II).[2]

Second, once this two-year period ends, the USPTO may accept late maintenance fees only "if the delay is shown to the satisfaction of the Director to have been *unavoidable*." 35 U.S.C. § 41(c)(1) (emphasis added); see MPEP § 2590 (I). The "unavoidable delay" standard is a high one and places "a heavy burden of proof" on the patent owner to establish that the delay was beyond his or her control. H.R. Rep. No. 97-542, at 8 (1982), reprinted in 1982 U.S.C.C.A.N. 765, 772. Congress intended the unavoidable delay standard to be strict because, upon the expiration of the patent, the invention falls into the public domain. See Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 153 (1989). Public policy supports the public's expectation that inventions which have been in the public domain for over *two years* will remain there, absent the patentee carrying this heavy burden. See Laerdal Med. Corp., 877 F. Supp. at 257 & n.5 (explaining that, before the Patent Act was amended in 1992, all requests to revive expired patents were subject to the strict "unavoidable delay" standard; the 1992 amendment created the looser "unintentional delay" standard which now applies during the first two years after the patent's expiration) (citing H.R. Rep. No. 993, 102nd Cong., 2d Sess., 2 (1992), reprinted in 1992 U.S.C.C.A.N. 1623, 1623-24); accord, e.g., Femspec, LLC v. Dudas, 2007 WL 216493, at *9 (N.D. Cal. Jan. 26, 2007).

The "unavoidable delay" standard is a heightened standard that is not satisfied by patentee claims that a delay was unintentional. Instead, the patent owner must provide evidence

---

[2] The MPEP "is published to provide [USPTO] patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the USPTO." MPEP, Forward. The MPEP is available at http://www.uspto.gov/web/offices/pac/mpep/mpep.htm.

that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent." 37 C.F.R. § 1.378(b). Courts have interpreted this standard to mean that the plaintiff must exercise the diligence "'generally used and observed by prudent and careful men in relation to their *most important business*.'" R.R. Donnelley & Sons Co. v. Dickinson, 123 F. Supp. 2d 456, 459 (N.D. Ill. 2000) (quoting In re Mattullath, 38 App. D.C. 497, 514 (1912)) (emphasis added); accord, e.g., Millman v. U.S.P.T.O., 257 Fed. Appx. 307, 310 (Fed. Cir. 2007). To show that it has used such diligence, the patent owner must, *inter alia*, "enumerate the steps taken to ensure timely payment of the maintenance fee." 37 C.F.R. § 1.378(b)(3) (emphasis added). The patent owner bears the burden of proof. See Donnelley, 123 F. Supp. 2d at 459.

Numerous courts have affirmed USPTO determinations, often made despite sympathetic circumstances, that patent owners' delays in paying maintenance fees were not unavoidable. E.g., Burandt v. Dudas, 528 F.3d 1329 (Fed. Cir. 2008), cert. denied, 129 S. Ct. 1048 (2009); Millman, 257 Fed. Appx. 307; Ray v. Lehman, 55 F.3d 606 (Fed. Cir. 1995); Femspec, LLC v. Dudas, 2007 WL 216493 (N.D. Cal. Jan. 26, 2007); MMTC, Inc. v. Rogan, 369 F. Supp. 2d 675 (E.D. Va. 2004); Donnelley, 123 F. Supp. 2d 456; Rydeen v. Quigg, 748 F. Supp. 900 (D.D.C. 1990), aff'd per curiam, 937 F.2d 623 (Fed. Cir. 1991).

## 2.    **Standard of Review**

It is well established that when a court is asked to overturn a federal agency's discretionary decision under the APA, the arbitrary-and-capricious standard of review applies. See, e.g., Com. of P.R. v. United States, 490 F.3d 50, 61 (1st Cir. 2007) (citing 5 U.S.C. §

706(2)(A)), <u>cert. denied</u>, 128 S. Ct. 1738 (2008); <u>Ray v. Lehman</u>, 55 F.3d 606, 608 (Fed. Cir.

1995).  Under this standard, the court is "deferential to the agency's decision."  <u>Com. of P.R.</u>,

490 F.3d at 61; <u>accord</u>, <u>e.g.</u>, <u>Laerdal Med. Corp.</u>, 877 F. Supp. at 258 (stating that the USPTO

"must be accorded a large degree of discretion" in determining whether delay in paying a

maintenance fee was unavoidable).  The scope of review is "narrow" and "a court is not to

substitute its judgment for that of the agency."  <u>Motor Vehicles Mfrs. Ass'n v. State Farm Mut.</u>

<u>Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983).  In addition, the court's review is limited to the

administrative record.  <u>See Com. of P.R.</u>, 490 F.3d at 50; <u>Camp v. Pitts</u>, 411 U.S. 138, 142

(1973) (holding that where summary judgment is based on the administrative record, there can

be no genuine issue of material fact regarding the contents of the record).[3]  The court is

prohibited from considering new evidence that was not presented to the agency.  <u>See Wisher v.</u>

<u>Coverdell</u>, 782 F. Supp. 703, 709-10 (D. Mass. 1992), <u>appeal dismissed in unpublished op.</u>, 1992

WL 101556 (1ˢᵗ Cir. 1992).

> **3.     The USPTO Did Not Act Arbitrarily or Capriciously in Rejecting**
> **SpringGuard's Argument That Its Four-Year Delay in Paying Its**
> **Maintenance Fee Was Unavoidable.**
>
> > **A.     SpringGuard Failed to Enumerate Any Steps That It or Its Counsel**
> > **Took to Ensure Timely Payment of Its First Maintenance Fee.**

A showing of diligence is "essential to show unavoidable delay."  <u>Douglas v. Manbeck</u>,

1991 WL 237823 at *3, 21 USPQ2d 1697, 1700 (E.D. Pa. 1991) ("<u>Douglas I</u>"), <u>aff'd</u>, 1992 WL

---

[3] The USPTO believes the Court can rule on this motion by considering only the Complaint and
the nine exhibits attached thereto.  If it does so, dismissal under Rule 12(b)(6) would be
appropriate.  If, however, the Court considers additional documents found in the administrative
record, the USPTO's motion would be converted into one for summary judgment.  <u>See</u> Fed. R.
Civ. P. 12(d); <u>Holy Land Found. For Relief & Dev. v. Ashcroft</u>, 333 F.3d 156, 165 (D.C. Cir.
2003).

162547 (Fed. Cir. 1992) (unpublished) ("Douglas II").  As part of this showing, the patentee "*must enumerate the steps taken to ensure timely payment of the maintenance fee*, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly."  37 C.F.R. § 1.378(b)(3) (emphasis added).  The proof requirements of 37 C.F.R. § 1.378(b)(3) are not unreasonable, but "merely set[] forth how one is to prove that he was reasonably prudent, i.e., by showing what steps he took to ensure that the maintenance fee would be timely paid."  Ray v. Lehman, 55 F.3d 606, 609 (Fed. Cir. 1995).  "We do not see these requirements as additional to proving unavoidable delay, but as the *very elements of unavoidable delay*."  Id. (emphasis added).  Moreover, "in determining whether a delay in paying a maintenance fee was unavoidable, one looks to whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person."  Id.

There can be no dispute that SprinGuard failed to enumerate any steps taken by Attorney Jordan, the party allegedly responsible for paying the '529 patent maintenance fee, to ensure that he timely paid that fee.  There is simply no evidence, from SprinGuard or Jordan, that Jordan had any system for keeping track of maintenance fee deadlines, that he docketed the first '529 patent maintenance fee, or that he ever discussed the payment of maintenance fees with SprinGuard.  See id. (enumerating steps taken to ensure timely maintenance-fee payment is one of the elements of showing unavoidable delay).

## B. Attorney Jordan's Negligence Is Imputed to SprinGuard.

Instead, SprinGuard asserts that its retention of a patent attorney was all that was required of a reasonably prudent person, and that the maintenance fee went unpaid because of Jordan's "gross[] negligen[ce]."  Complaint ¶¶ 45, 50-51, 53.  However, this is legally insufficient to

11

constitute unavoidable delay.  As the Federal Circuit has stated, "any acts or omissions of [a patentee's] representative ... are attributable to [the patentee] himself."  <u>Douglas II</u>, 1992 WL 162547, at *2.  Thus, Jordan's gross negligence is SprinGuard's gross negligence, which is the very opposite of the reasonable diligence that must be shown to justify a finding of unavoidable delay.

In this regard, the facts are very much like those in <u>Douglas</u>, which concerned "unavoidable delay" language in the Patent Act section dealing with the revival of abandoned patent applications, 35 U.S.C. § 133.[4]  There, plaintiff retained counsel to represent him at the USPTO in connection with his patent application.  Counsel, on behalf of plaintiff, timely responded to initial correspondence from the Office rejecting the application, but failed to timely respond to subsequent correspondence.  <u>See</u> <u>Douglas I</u>, 1991 WL 237823 at *1.  The application thus went abandoned as a matter of law, and a notice of abandonment was sent to counsel.  <u>See id.</u>  Plaintiff's counsel died six months later.  <u>See id.</u>  In seeking to revive the abandoned application two and a half years later, plaintiff argued that the delay in responding to the second office action was unavoidable because of plaintiff's reliance on his attorney, plaintiff's own lack of knowledge, and his attorney's failure to keep plaintiff informed.  <u>See id.</u>

The district court held otherwise.  Specifically, the court held that the "negligence of the attorney does not discharge the duty of the plaintiff to exercise due diligence."  <u>Id.</u> at *4.  Plaintiff failed to show diligence because he failed to make any inquiry into the status of the application, or take any other action with regard to the application, for two and a half years

---

[4] The "unavoidable delay" standard is considered to be the same both for the Patent Act provision on abandoned applications and the provision on expiration of patents due to failure to timely pay maintenance fees.  <u>See</u> MPEP § 2590 (I) (citing <u>Ray v. Lehman</u>, 55 F.3d 606, 608-09 (Fed. Cir. 1995)).

following the death of his attorney.  See id. at *3.  The court therefore granted the USPTO's

motion for summary judgment.  See id. at *4.  The Federal Circuit affirmed.  Douglas II, 1992

WL 162547, at *2.

The same result should be reached here.  As in Douglas, the mere fact that SprinGuard

retained an attorney to represent it in connection with the patent application process did not

relieve SprinGuard of all responsibility with respect to the issued patent, and thus it could not, by

itself, constitute reasonable care on SprinGuard's part.  To the extent that Jordan was negligent

in failing to pay SprinGuard's maintenance fee, such negligence must be attributed to

SprinGuard itself.  See id. at *2; Ray v. Lehman, 55 F.3d 606, 609 (Fed. Cir. 1995); see also

KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 16 (1st Cir. 2003) (the First Circuit

has "consistently turned a deaf ear to the plea that the sins of the attorney should not be visited

upon the client") (internal quotation omitted).

Moreover, SprinGuard still had a duty, at a minimum, to stay in touch with its attorney,

or to make some inquiry as to the status of its patent.  SprinGuard utterly failed to do either.  As

SprinGuard admits, the patent's status could have been readily determined from the USPTO's

public database, available on the USPTO website.  See Complaint, Ex. D at 13 & 17 (¶ 4); A295

& A312 (¶ 4).[4]  Given these facts, the USPTO did not abuse its discretion in determining that

SprinGuard had failed to exercise the level of diligence used by prudent and careful persons "in

relation to their *most important business*.'"  R.R. Donnelley & Sons Co. v. Dickinson, 123 F.

Supp. 2d 456, 459 (N.D. Ill. 2000) (quoting In re Mattullath, 38 App. D.C. 497, 514 (1912))

---

[4] In this regard, SprinGuard's conduct is similar to the patentee's in Millman, where the Federal
Circuit, in affirming the USPTO's decision not to revive a patent, noted how plaintiff "took
surprisingly little interest in even surficial details of his issued patent."  Millman v. USPTO, 257
Fed. Appx. 307, 310 (Fed. Cir. 2007).

(emphasis added).  Notably, SpringGuard even failed to get a bound copy of its letters patent after the patent issued.  See Complaint ¶ 28.  This is significant because the inside cover of this document expressly sets forth the necessity of paying maintenance fees, and the schedule for doing so.  See Ray, 55 F.3d at 610; Millman v. USPTO, 257 Fed. Appx. 307, 310 (Fed. Cir. 2007).  And since SprinGuard was not aware of the necessity of paying maintenance fees, it could not have had any explicit understanding with Jordan that Jordan would be responsible for such payment.  In sum, SprinGuard cannot, as matter of law, show unavoidable delay based only upon its retention of Jordan, its own ignorance as to the necessity for paying maintenance fees, and Jordan's failure to pay those fees.

### C.    The Non-Receipt of Maintenance Fee Reminders, Which Are Merely a USPTO Courtesy, Does Not Constitute Unavoidable Delay.

SprinGuard also complains that it did not receive a maintenance fee reminder from the USPTO.  Complaint ¶ 26.  This is legally irrelevant, however.  It is well settled that the USPTO has no obligation to remind patentees when their maintenance fees are due.  See, e.g., MMTC, Inc. v. Rogan, 369 F. Supp. 2d 675, 677 (E.D. Va. 2004); Rydeen v. Quigg, 748 F. Supp. 900, 902, 905 (D.D.C. 1990), aff'd per curiam, 937 F.2d 623 (Fed. Cir. 1991).  As the MPEP states:

> Under the statutes and the regulations, the Office has no duty to notify patentees when their maintenance fees are due.  It is the responsibility of the patentee to ensure that the maintenance fees are paid to prevent expiration of the patent.  The Office will, however, provide some notices as reminders that maintenance fees are due, but the notices, errors in the notices or in their delivery, or the lack or tardiness of notices will in no way relieve a patentee from the responsibility to make timely payment of each maintenance fee to prevent the patent from expiring by operation of law.  The notices provided by the Office are courtesies in nature and intended to aid patentees. The Office's provision of notices in no way shifts the burden of monitoring the time for paying maintenance fees on patents from the patentee to the Office.

14

MPEP § 2575.  It is equally well settled that failure to receive a maintenance fee reminder from the USPTO does not constitute unavoidable delay.  See id.; e.g., MMTC, 369 F. Supp. 2d at 678; Rydeen, 748 F. Supp. at 904-05.  Thus, the fact that SprinGuard received no reminder from the USPTO about its maintenance-fee obligation is irrelevant.

In any event, although the USPTO was not legally obligated to send a reminder notice, the inventors concede that the USPTO *did* send such a notice to Jordan in August 2002 (within the six-month grace period), and an expiration notice in February 2003 (during the period in which the less restrictive "unintentional delay" standard of proof applied).  See Complaint ¶¶ 26-27; id., Ex. D at 13 & 17 (¶¶ 3, 5), A295 & A312 (¶¶ 3, 5).

**4.      SprinGuard's New Argument, That the USPTO Improperly Sent a Patent Expiration Notice to Jordan After His Name Was Removed from the List of Registered Patent Attorneys, Should <u>Not Be Considered, and in Any Event Is Unavailing.</u>**

In its Complaint, SprinGuard raises a new argument not presented to the USPTO in either its petition or its request for reconsideration (or in its improper second petition):  that the USPTO is somehow responsible for SprinGuard's delayed payment of the maintenance fee because it sent a notice of patent expiration to Jordan in February 2003 after his name had been taken off the list of registered patent attorneys in December 2002, such that he was allegedly unable to pay SprinGuard's maintenance fee (even though the USPTO sent Jordan a reminder notice in August 2002, when he was still on the list).  See Complaint, ¶¶ 34-41 & Exhibits B-C attached thereto.[5]

---

[5] SprinGuard suggests that the removal of Jordan's name from the list of registered patent attorneys is evidence of misconduct on Jordan's part.  This is false.  His name was removed simply because he did not respond, within a certain time frame, to a routine letter sent by the USPTO inquiring whether he wished to remain on the register.  See Complaint, Ex. B at 1; 37 C.F.R. § 10.11(b).  He likely did not respond to this letter because it was sent to an old address.  Compare Complaint, Ex. B at 11, with Complaint, Ex. C at 1.  Reinstatement to the register after such removal can be accomplished merely by providing updated contact information and paying

SpringGuard further argues that doing so violated MPEP § 407.  This argument fails for a number of reasons.

First, as already indicated, SpringGuard did not present this argument or the evidence in support of it to the USPTO.  It would therefore be improper for this Court to consider that argument and evidence in the first instance as grounds for overturning the USPTO's decision. See Wisher v. Coverdell, 782 F. Supp. 703, 709-10 (D. Mass. 1992) ("Judicial review [under the APA] is made on the administrative record already in existence and not on new evidence presented for the first time before the district court.") (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)), appeal dismissed in unpublished op., 1992 WL 101556 (1st Cir. 1992).  Second, as also explained *supra*, any errors in notices regarding maintenance fees, or in the delivery of such notices, "'in no way relieve a patentee from the responsibility to make timely payment of each maintenance fee to prevent the patent from expiring by the operation of law.'" Rydeen v. Quigg, 748 F. Supp. 900, 907 (D.D.C. 1990) (quoting 49 Fed. Reg. at 34723), aff'd per curiam, 937 F.2d 623 (Fed. Cir. 1991); accord, e.g., MMTC, Inc. v. Rogan, 369 F. Supp. 2d 675, 678 (E.D. Va. 2004).  Thus, the USPTO's sending of an expiration notice to Jordan after his name was removed from the list of registered patent attorneys cannot constitute unavoidable delay as a matter of law.

Third, SpringGuard is wrong that Jordan could not pay the '529 patent maintenance fee after his name was removed from the list of registered patent attorneys.  Payment of maintenance fees need *not* be done only by a registered patent attorney retained by the patent owner.  Rather,

---

a fee, see 37 C.F.R. § 10.11(b), which Jordan did in March 2004.  See Complaint, Ex. C at 1.

"*any person or organization* may pay maintenance fees and any necessary surcharges on behalf of the patentee."  37 C.F.R. § 1.366(a) (emphasis added).

Finally, the USPTO's mailing of the expiration notice to Jordan after his name was removed from the register did not violate MPEP § 407.  That provision applies only to communications between an examiner and an applicant in the course of the examination of a patent application.  It is completely inapplicable to the mailing of courtesy maintenance fee reminders or notices of patent expiration for failure to pay a maintenance fee, neither of which is legally required.  For those communications, see 37 C.F.R. § 1.33(d) (correspondence relating to maintenance fees is sent to a patentee's "correspondence address").  In the present case, neither Jordan nor SpringGuard ever filed an update to the correspondence address for the patent.[6]

### 5.    SpringGuard Cannot Demonstrate Entitlement to the Extraordinary Remedy of Mandamus Relief.

As an alternative to its APA claim, SpringGuard asks this Court to issue a writ of mandamus because it "will have no adequate alternative relief if the relief sought under [the APA] is not granted."  Complaint ¶ 69.  The relevant statute is 28 U.S.C. § 1361, which provides:  "The district courts shall have original jurisdiction of any action in the nature of

---

[6] SpringGuard also asserts that Jordan "concealed" his "misconduct" from SpringGuard, apparently in an attempt to avoid responsibility for Jordan's actions.  Complaint, ¶¶ 51, 60.  As a preliminary matter, SpringGuard never made this assertion in either its petition or its request for reconsideration.  It would be unfair and improper for this Court to address an allegation that the USPTO was not able to consider in the first instance.  More importantly, SpringGuard simply cannot show, based on the administrative record, "concealment" of "misconduct" on Jordan's part throughout the entire period from the time the '529 patent expired in January 2003 to SpringGuard's discovery of the expiration almost four years later, in November 2006. SpringGuard has not alleged that it even tried to contact Jordan during this period, or that Jordan was unable or unwilling to receive communications during this period.  In fact, Jordan was apparently in contact with the USPTO in March 2004, since he provided the necessary information and fee to have his name reinstated on the USPTO's list of registered patent attorneys.  See Complaint, Exhibit C at 1.

17

mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." It is well established that a writ of mandamus is considered a "drastic remed[y]" that is to be used only when the petitioner has made a showing that he has "no other adequate means" to attain the relief he desires, and that his right to that relief is "clear and indisputable." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980); accord, e.g., Kerr v. United States District Court, 426 U.S. 394, 402 (1976); In re Sterling-Suarez, 323 F.3d 1, 3 (1st Cir. 2003) ("It is axiomatic that the remedy of mandamus is a drastic one and should be invoked only under extraordinary circumstances.").

SpringGuard's request for mandamus fails for two reasons. First, the company does have an adequate alternative remedy: the APA. SpringGuard may not justify its claim for mandamus simply because it cannot prevail under the APA; all that is necessary is that a plaintiff have the opportunity to present the claim in question. See Cheney v. United States District Court, 542 U.S. 367, 379 (2004), e.g., Khitab v. Novak, 524 F. Supp. 2d 105, 107 (D. Mass. 2007) (stating that mandamus jurisdiction will not lie when there is "adequate conventional means for review, such as that provided by the APA"). If SpringGuard's position were correct, any plaintiff with the opportunity to pursue his claim under a statute or the common law might nevertheless be entitled to mandamus relief simply because he did not prevail on his cognizable claim.

Second, in order to qualify for mandamus consideration, the agency's duty in question must be "nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt." Khitab, 524 F. Supp. 2d at 107; accord, e.g., Heckler v. Ringer, 466 U.S. 602, 616 (1984); Eveland v. Dir. of C.I.A., 843 F.2d 46, 51 (1st Cir. 1988). Here, the USPTO has a high degree of discretion to determine whether a patent owner's delay in paying a maintenance fee was

18

unavoidable.  <u>See</u> 35 U.S.C. § 41(c)(1) (patent owner must show "to the satisfaction of the

[USPTO]" that the delay was unavoidable); 37 C.F.R. § 1.378(b)(3) (same); <u>Laerdal Med. Corp.

v. Ambu, Inc.</u>, 877 F. Supp. 255, 256 & n.3 (D. Md. 1995) (stating that the USPTO "must be

accorded a large degree of discretion" in determining whether failure to timely pay a

maintenance fee is unavoidable).  Therefore, mandamus relief would be wholly inappropriate.

**CONCLUSION**

SprinGuard cannot meet its burden of showing that the USPTO abused its discretion in

determining that SprinGuard's four-year delay in paying the maintenance fee on its patent was

not unavoidable.  Nor can SprinGuard show an entitlement to the extraordinary remedy of

mandamus relief.  Therefore, the Court should grant the USPTO's motion to dismiss the

Complaint or, in the alternative, enter summary judgment in favor of the USPTO.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:   */s/ Christine J. Wichers*
      Christine J. Wichers
      Assistant U.S. Attorney
      John J. Moakley U.S. Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210
      (617) 748-3278

      *Of Counsel*:
      Raymond Chen
      Solicitor, U.S. Patent and Trademark Office

      Benjamin D. M. Wood
      Mary Kelly
      Associate Solicitors

Dated: April 6, 2009


## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on April 6, 2009.


      */s/ Christine J. Wichers*
      Christine J. Wichers

20