UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SPRINGUARD TECHNOLOGY GROUP INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | C.A. No. 08-12119-RWZ |
| UNITED STATES PATENT AND TRADEMARK OFFICE; and JOHN J. DOLL in his official capacity as Acting Director of the U.S. Patent and Trademark Office, | | |
| Defendants. | | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

It is undisputed that the patent of plaintiff SprinGuard Technology Group, Inc. ("SprinGuard") expired because SprinGuard failed to pay a required maintenance fee until more than four years after it became due. SprinGuard applied to the USPTO for reinstatement of its patent, arguing that its delay was unavoidable. The USPTO disagreed, finding that SprinGuard had failed to meet its heavy burden of proving that its delay was unavoidable, because it had failed to "enumerate the steps taken to ensure timely payment of the maintenance fee," as required by 37 C.F.R. § 1.378(b)(3) (hereinafter, "Rule 378(b)(3)").

SprinGuard has appealed to this Court under the Administrative Procedure Act ("APA"), arguing that the USPTO's decision was arbitrary and capricious.[1] The defendants filed a motion to dismiss, or, in the alternative, for summary judgment, on April 6, 2009. See Docket Nos. 8-

---

[1] SprinGuard has abandoned its claim for mandamus relief. See SprinGuard's Memo. of Law at 7 n.2.

10.  On June 12, 2009, SprinGuard filed an opposition/cross-motion for summary judgment.  See Docket Nos. 14-17.  This is the defendants' opposition to SprinGuard's cross-motion.

## THE ISSUE BEFORE THE COURT

Because the defendants' principal brief already contains their statement of material facts and a summary of the relevant legal principles, those will not be restated here.  The defendants will merely repeat the issue that is before the Court:  whether the USPTO acted arbitrarily and capriciously when it decided that SprinGuard had failed to "enumerate the steps taken to ensure timely payment of the maintenance fee," as required by Rule 378(b)(3).  Defendants maintain that the USPTO did not act arbitrarily or capriciously in finding that SprinGuard failed to present evidence that either it or its representative, Attorney Richard Jordan, took steps to ensure timely payment of the fee.  Because it did not know that maintenance fees were required, SprinGuard itself took no steps to ensure the timely payment of the fee.  All it did was blindly assume – without making any attempt to contact Attorney Jordan, even when it received no bills or other communications from him – that Jordan would take whatever steps were necessary to maintain the patent.  As for Attorney Jordan, SprinGuard presented no evidence that he took any steps to ensure timely payment of the fee.  The evidence before the agency regarding Attorney Jordan was that, during the entire period between the date the maintenance fee became due (July 26, 2002) and the last date on which SprinGuard could have revived its patent merely by paying a surcharge and advising the USPTO that its delay was unintentional (January 25, 2005), Jordan

was licensed to practice law, including before the USPTO,[2] and that he communicated with the USPTO at least once, in March 2004.

## ARGUMENT

In support of its position that the USPTO's decision was arbitrary and capricious, SprinGuard raises four arguments. First, SprinGuard argues that the USPTO's decision is inconsistent with four past USPTO decisions finding unavoidable delay in cases of attorney misconduct, and that this alleged inconsistency mandates a finding that the USPTO's decision here was arbitrary and capricious. See Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (docket no. 15) (hereinafter, "Pl. Mem.") at 8-10. Second, SprinGuard asserts that the USPTO's failure to consider a gross negligence exception to the rule of Link v. Wabash Railroad Co., 370 U.S. 626 (1962) – that a party is bound by the actions of its counsel – was arbitrary and capricious. Pl. Mem. at 12-14. Third, SprinGuard argues that the USPTO's failure to apply a gross negligence exception to the Link rule under the facts of this case was arbitrary and capricious. Pl. Mem. at 14-16. Finally, SprinGuard argues that the USPTO's insistence that SprinGuard show the steps taken to ensure timely payment of the maintenance fee, despite its attorney's refusal or inability to cooperate with SprinGuard's

---

[2] In its May 2007 Request for Reconsideration, SprinGuard represented to the USPTO that "[a]t the time of the issuance of the Letters Patent, Attorney Richard A. Jordan, was and still remains an [a]ttorney [r]egistered to practice before the USPTO and in good standing." A336. Attorney Jordan was not suspended by the Massachusetts Board of Bar Overseers until 2006. A348. There is no evidence to support SprinGuard's hypothesis that "Jordan had effectively ceased the practice of law" during the period when SprinGuard's fee became due in 2002. Pl. Mem. at 19. On the contrary, he was sufficiently interested in maintaining his practice that he contacted the USPTO in March 2004 to have his name reinstated on the list of registered patent attorneys. See infra n.6.

investigation, renders the USPTO's decision arbitrary and capricious. Pl. Mem. at 17-20. These arguments are unpersuasive.

### 1. SprinGuard's Inconsistency Argument Should Not Be Considered, and, in Any Event, Is Unavailing.

After filing this appeal, SprinGuard submitted a FOIA request to the USPTO for all unpublished decisions (*i.e.*, those not available on Westlaw, LEXIS, or the USPTO's website) from the last ten years in which the USPTO had granted a request to excuse the late filing of a maintenance fee or other delay on the grounds that the delay was "unavoidable." See Letter dated Apr. 28, 2009 to USPTO's FOIA Officer from SprinGuard's counsel (copy attached as Exhibit A). In response, the USPTO provided a list of roughly 1,450 such decisions. See Letter dated May 29, 2009 to USPTO's FOIA Officer from SprinGuard's counsel (copy attached as Exhibit B). SprinGuard did not request decisions, from the last ten years or otherwise, in which the USPTO *denied* the late filing of a maintenance fee or other delay on the grounds that the delay was not "unavoidable." From the 1,450 unpublished decisions in which the USPTO found unavoidable delay, SprinGuard located four in which the USPTO allegedly did not hold patentees bound by the mistakes or negligence of their counsel. See Pl. Memo. at 8-9; id. at 10 n.3 (the four decisions "are available only in the PTO's paper patent files"). SprinGuard now argues that "the PTO's failure to acknowledge – much less explain" the alleged inconsistency between those four decisions and its decision on SprinGuard's petition "renders its action arbitrary and capricious." Pl. Mem. at 9. SprinGuard's contention is without merit.

First, SprinGuard did not raise this argument to the USPTO, and thus it would be inappropriate for the Court to consider it now. It is undeniable that a district court's review of an agency decision under the APA, to determine whether the basis for the agency's decision was

arbitrary or capricious, is limited to the administrative record.  See, e.g., Axiom Resource Mgmt, Inc. v. United States, 564 F.3d 1374, 1379-80 (Fed. Cir. 2009) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973); Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)).  This means the Court's review is not only limited to the evidence that was before the USPTO but also to the arguments presented to the agency.  "It is beyond cavil that a petitioner's failure to assert an argument before an administrative agency bars it from asserting that argument for the first time before a reviewing court."  Ry. Labor Executives' Ass'n v. United States, 791 F.2d 994, 1000 (2d Cir. 1986); accord, e.g., Getty Oil Co. v. Andrus, 607 F.2d 253, 256 (9th Cir. 1979); Stephens v. U.S. Dep't of Labor, 571 F. Supp. 2d 186, 190 n.4 (D.D.C. 2008); Harvard Pilgrim Health Care v. Thompson, 318 F. Supp. 2d 1, 8 (D.R.I. 2004).

     SprinGuard could have made its FOIA request anytime after it discovered that its patent had expired.  If, after receiving the USPTO's initial decision in March 2007, SprinGuard suspected the agency's decision was inconsistent with previous USPTO decisions, it could have made its FOIA request at that time.  It then could have cited the four prior decisions in its request for reconsideration.  That would have given the USPTO the opportunity to consider, and either accept or reject, SprinGuard's argument.  But the agency never had that opportunity because SprinGuard waited to cite to the four allegedly inconsistent decisions until this appeal.  It is wholly unreasonable for SprinGuard to complain that the USPTO did not "acknowledge – much less explain" an inconsistency that SprinGuard did not bring to the agency's attention.  Pl. Mem. at 9.  Because SprinGuard did not raise the inconsistency argument before the USPTO, it is barred from raising it now.

Second, four allegedly inconsistent decisions – out of 1,450 unpublished decisions over the last ten years finding unavoidable delay; plus another 500 published decisions, see Pl. Mem. at 10 n.3; plus who knows how many unpublished decisions finding no unavoidable delay; plus who knows how many unavoidable-delay decisions that are more than ten years old – do not mean that the agency's decision on SprinGuard's petition was arbitrary and capricious. These are individualized-inquiry, discretionary decisions made on a case-by-case basis. See Ray v. Lehman, 55 F.3d 606, 609 (Fed. Cir. 1995) (decisions are made "on a case-by-case basis, taking all of the facts and circumstances into account"); USPTO's decision (A321 at n.4) (same); 35 U.S.C. § 41(c)(1) (a petitioner must prove unavoidable delay "to the satisfaction of the [USPTO]"). Unpublished adjudicatory decisions are not binding precedent; if they were, it would only be fair to publish them so that patentees would know about them. Moreover, "[a]n agency need not exercise its discretion identically in every case." Villela v. Air Force, 727 F.2d 1574, 1577 (Fed. Cir. 1984); see also Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 186-87 (1973) ("The employment of a sanction within the authority of an administrative agency is thus not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases."). The Federal Circuit has made clear that prior administrative adjudications by the USPTO, unlike regulations implemented after notice-and-comment rulemaking, are not binding on future adjudications. See In re Boulevard Entertainment, Inc., 334 F.3d 1336, 1343 (Fed. Cir. 2003).

In Boulevard Entertainment, the Federal Circuit considered an appeal from an applicant whose application to register two trademarks was rejected because the USPTO determined that the trademarks were "immoral or scandalous." The applicant argued that the USPTO had

previously registered a similar mark, so the USPTO erred in rejecting its trademark. See id. The court disagreed, stating: "[T]he USPTO must decide each application on its own merits, and decisions regarding other registrations do not bind either the agency or this court. . . . The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases." Id.

The same reasoning applies here. Even if SprinGuard had presented the USPTO with the four decisions that it cherry-picked out of the thousands of USPTO decisions on unavoidable delay, the agency would not have been required to reinstate SprinGuard's patent. It might have *permitted* the USPTO to do so, and indeed this Court might have reached a different decision had it been in the shoes of the USPTO. Under the arbitrary and capricious standard, however, "a court is not to substitute its judgment for that of the agency." Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "A court reviewing the agency decision 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Burandt v. Dudas, 528 F.3d 1329, 1332 (Fed. Cir. 2008) (affirming district court's decision that USPTO did not act arbitrarily or capriciously in holding that delay in paying maintenance fee was not unavoidable) (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).

Here, the USPTO's decision was not a "clear error of judgment," id., because it was based on SprinGuard's failure to "enumerate the steps taken to ensure timely payment of the maintenance fee," as required by Rule 378(b)(3). SprinGuard could have met its burden by

7

presenting evidence regarding such steps either taken by SprinGuard itself or by Attorney Jordan. It did neither.

The facts in this case are analogous to those in another APA case, McDonnell Douglas Corp. v. National Aeronautics & Space Administration, 895 F. Supp. 319 (D.D.C. 1995), vacated as moot, 88 F.3d 1278 (D.C. Cir. 1996) (unpublished). McDonnell Douglas appealed NASA's decision, in response to a FOIA request, to release certain "termination schedule percentages" in NASA's contract to buy Delta II rockets from McDonnell Douglas.[3] McDonnell Douglas argued to the district court that NASA's decision was arbitrary and capricious, in part because it was inconsistent with eight prior decisions by NASA not to release termination schedule percentages in the Delta II contract in response to other FOIA requests. See id. at 323.

First the district court had to decide whether any of the eight prior decisions were part of the administrative record. It held that five of the decisions were part of the record because they were specifically referenced in a letter by McDonnell Douglas to NASA that was part of the record. See id. at 324. However, neither McDonnell Douglas nor NASA had submitted or referenced any of the other three decisions during the administrative proceeding. Therefore, the court held, those three decisions were not part of the administrative record and could not be considered by the court. See id.

The court then turned to McDonnell Douglas's argument that NASA's decision to release the information was arbitrary and capricious because it was inconsistent with the five prior decisions that the court agreed were part of the record. The court rejected the argument, noting

---

[3] Termination schedule percentages specify the percentage of total launch prices that the contractor refunds if NASA cancels a mission. See 895 F. Supp. at 322 n.3.

that NASA's policy is to process FOIA requests using "individual inquiries" and factoring in "a multitude of variables," which "make[s] each request unique." Id.  Therefore, the prior decisions carried no precedential effect.  All that was required under NASA's FOIA regulations, said the court, was for NASA to give a brief explanation for its decision that was rationally based.  NASA had met this requirement.  See id.

For the same reason that the district court in McDonnell Douglas excluded three prior NASA decisions, the court here should not consider any of the four prior USPTO decisions cited by SprinGuard: none of those decisions was referenced or submitted during the administrative proceeding.  And, even if those four decisions had been made part of the administrative record, they would not support a finding that USPTO's decision was arbitrary and capricious.  As explained above, the four decisions were unpublished and did not constitute binding precedent.

   **2. There Is No Obligation Under the APA to Explore Every So-Called "Viable Policy Alternative" in Agency Adjudications**.

SprinGuard next argues that the USPTO's decision is arbitrary and capricious because it "failed even to consider making an exception to the Link rule in this case." Pl. Mem. at 10 (citing Link v. Wabash Railroad Co., 370 U.S. 626 (1962)).  According to SprinGuard, the USPTO was obligated to consider "viable alternatives" to its chosen policy, and a "gross negligence" exception to the Link rule is such a "viable policy alternative." Id.  SprinGuard is wrong.

First of all, SprinGuard waived this argument by failing to raise it before the USPTO. See Ry. Labor Executives' Ass'n v. United States, 791 F.2d 994, 1000 (2d Cir. 1986), and the other cases cited supra at 4-5.  Nowhere in the administrative record did SprinGuard argue that, while ordinary negligence by an attorney is chargeable to the client, the agency should consider

making a policy exception for gross negligence. Nor did it argue, as it does now, that the USPTO's having left open in a prior decision the question of whether gross negligence should be an exception to the Link rule, required the agency to revisit that issue here. See Pl. Mem. at 13-14 (citing In re Lonardo, 17 U.S.P.Q.2d 1455, 1990 Commr. Pat. LEXIS 18 (1990)).[4] It is difficult to understand why the USPTO should be faulted for not examining an issue that was not brought to its attention.

Second, even if SprinGuard had preserved the issue, the USPTO was not obligated to explore every arguable "viable policy alternative" in deciding SprinGuard's petition. SprinGuard cites NLRB v. Beverly Enterprises-Massachusetts, Inc., 174 F.3d 13, 23 (1st Cir. 1999), for this proposition. That case, however, does *not* so hold. Rather, the First Circuit used the phrase "viable alternative" in a parenthetical describing a Supreme Court case dealing with administrative rule-making, not agency adjudications. See id. (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983)). Of course, the APA's notice-and-comment procedural requirements, which are not at issue here, are far stricter than arbitrary-and-capricious review of adjudicatory decisions. See, e.g., F.C.C. v. Fox Television Stations, Inc., 129 S. Ct. 1800, 1819 n.8 (2009); Wyeth v. Levine, 129 S. Ct. 1187, 1228 (2009) (Alito, J., dissenting). But even in the more rigorous context of rulemaking, the Supreme Court has made clear that an agency need *not* consider all viable policy alternatives before taking action. See

---

[4] In Lonardo, the USPTO declined to charge a patent applicant with his attorney's errors because the attorney had intentionally deceived his client. See Lonardo, 17 U.S.P.Q.2d 1455, 1990 Commr. Pat. LEXIS at *16 ("[Attorney] Schwartz knowingly concealed the abandonment of the '365 application from Lonardo, and covered up the abandonment by filing and prosecuting the substitute application as though it were the '365 application."). SprinGuard does not argue, nor would there be any evidence to support a finding, that Attorney Jordan intentionally deceived SprinGuard.

Motor Vehicle Mfrs. Ass'n, 463 U.S. at 51 ("Nor do we broadly require an agency to consider all policy alternatives in reaching decision" on a rule).

Finally, even if SprinGuard had preserved the issue, and even if it were true that the First Circuit requires agencies to consider all viable policy alternatives before making an adjudicatory decision, it is the case law of the Federal Circuit, not the First Circuit, that is binding on this Court's review of the USPTO's decision. If this Court's decision is appealed, the reviewing court will be the Federal Circuit. See 28 U.S.C. § 1295(a)(1) (conferring exclusive jurisdiction in the Federal Circuit for appeals of final decisions in which the district court's jurisdiction was based "in whole or in part" on 28 U.S.C. § 1338); Comp. ¶ 8 (invoking jurisdiction under 28 U.S.C. § 1338). Therefore, the decisions of the Federal Circuit are binding in this district court action. See, e.g., Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc., __ F. Supp. 2d __, 2009 WL 2138486, at *7 n.12 (E.D. Pa. July 16, 2009) ("Decisions of the Federal Circuit Court of Appeals are binding on this court on matters of patent law."). Federal Circuit precedent is binding on this Court not only on substantive issues of patent law, but also on any procedural issues that (a) pertain to patent law, (b) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (c) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999).

### 3. SprinGuard's Argument that the USPTO Should Have Created a Gross Negligence Exception to the *Link* Rule in this Case Is Meritless.

SprinGuard next asserts that the USPTO should have made new law in this case and held that, when a patentee fails to timely pay a maintenance fee due to its attorney's gross negligence,

as opposed to regular negligence, its delay is unavoidable. There are several problems with this argument.

First, once again, SprinGuard waived this argument by failing to raise it before the USPTO.

Second, because the USPTO never made a finding whether or not the failure to timely pay the maintenance fee was the result of Jordan's gross negligence, SprinGuard's invitation to this Court to make such a finding in the first instance is improper. The grounds for the USPTO's decision were that SprinGuard had failed to "enumerate the steps taken to ensure timely payment of the maintenance fee," as required by Rule 378(b)(3). In its decision denying SprinGuard's request for reconsideration, the agency explained: "[P]etitioners have not provided the requisite showing of the steps taken by the responsible party to ensure the timely payment of the first maintenance fee.... [T]he office ... require[s] petitioners to ... provide a showing that someone, counsel or [SprinGuard], had taken the steps of a reasonable and prudent person in respect to his or her most important business, to track and timely pay the maintenance fee." A364; see id. at 366 ("at the time the maintenance fee fell due the showing of record is that neither Jordan nor petitioners had any steps in place to ensure payment of the maintenance fee"). The grounds for the agency's decision were *not* that Attorney Jordan had acted in a grossly negligent manner but which had to be charged to SprinGuard. See A365 (describing Attorney Jordan's errors as "mistakes or negligence").

Indeed, the USPTO could not have made a factual finding that Attorney Jordan was grossly negligent at the time the maintenance payment became due (July 26, 2002) or even during the period when SprinGuard could have revived its patent merely by paying a surcharge

and advising the USPTO that its delay was unintentional (the period ending on January 25, 2005), because SprinGuard presented no evidence that Jordan was grossly negligent during that period. For all anyone knows, Jordan failed to pay the maintenance fee during this period because his docketing system was shoddy or he was in the hospital, neither of which would have constituted gross negligence. To the extent SprinGuard presented evidence that Jordan acted at any time with gross negligence, an issue the USPTO neither decided in the proceeding below nor concedes here, that evidence concerned Jordan's behavior beginning in late 2006, when SprinGuard discovered that its patent had expired.[5] But that was not the issue before the USPTO and it is not the issue here. What SprinGuard argued before the USPTO was that Jordan's negligence caused SprinGuard to fail to timely pay the maintenance fee. The relevant time period for that payment ended – at the latest – by January 2005, after which SprinGuard faced

---

[5] SprinGuard tries to attach great importance to the immaterial fact that Attorney Jordan was not on the list of registered patent attorneys from December 2002 to March 2004. See Pl. Mem. at 15-16. Attorney Jordan's name was removed from the list under 37 C.F.R. § 10.11(b) simply because he did not respond, within a certain time frame, to a routine letter sent by the agency asking whether he wished to remain on the register. See Complaint, Ex. B at 1. In March 2004 he provided the necessary information and fee (*i.e.*, he was in communication with the USPTO, and there is no reason to think he would not have communicated with SprinGuard as well, had SprinGuard made any attempt to contact him then), and his name was reinstated. See Complaint, Exhibit C at 1. Contrary to SprinGuard's argument, it is not true that "removal from the list of registered patent attorneys renders ineffective any powers of attorney granted to the removed lawyer." Pl. Mem. at 16 (citing MPEP § 407). MPEP § 407 applies only to attorneys who are "suspended or disbarred." A patent practitioner may be suspended or disbarred (also referred to as an "exclusion" in the USPTO rules) only after notice and an extensive disciplinary proceeding before an Administrative Law Judge. See 37 C.F.R. §§ 10.130(a), 10.132 *et seq.* Jordan's administrative removal from the list of registered patent attorneys pursuant to 37 C.F.R. § 10.11 was not a suspension or disbarment. Therefore, MPEP § 407 is inapplicable.

the "heavy burden of proof" required to show unavoidable delay. H.R. Rep. No. 97-542, at 8 (1982), reprinted in 1982 U.S.C.C.A.N. 765, 772.[6]

Third, even if SprinGuard had presented evidence that Attorney Jordan was grossly negligent during the relevant time period, and even if the USPTO had made a finding agreeing with that assertion, neither the USPTO nor the Federal Circuit has created a gross-negligence exception to the Link rule and SprinGuard did not argue to the agency that it should create one. Moreover, the Federal Circuit's decision in Huston v. Ladner, 973 F.2d 1564 (Fed. Cir. 1992), illustrates a reluctance to make such an exception.[7] Huston concerned a patent interference between defendant's patent and Huston's patent application. Huston was required to submit evidence showing that he was entitled to judgment in his favor, pursuant to USPTO regulations. Huston's attorney filed the evidence but the USPTO ruled against him. Huston then changed counsel and sought to file additional evidence, which, per the regulations, could be submitted only upon a showing of "good cause." See id. at 1565. As his "good cause," Huston cited his original attorney's failure to submit all of the evidence in Huston's favor with the initial filing.

---

[6] Because Jordan was not suspended or disbarred, he still could have paid SprinGuard's maintenance fee during the period he was off the list of registered attorneys. See 37 C.F.R. § 1.366(a). In any event, even if SprinGuard were correct that Jordan "was not, in fact, serving as SprinGuard's legal representative in the PTO" during that period, Pl. Mem. at 16, it would change nothing. The fact remains that SprinGuard failed to show unavoidable delay because it failed to enumerate the steps that it or anyone acting on its behalf took to ensure timely payment of the fee. See Rule 378(b)(3). Moreover, it would be improper for the Court to consider the documents regarding the period of Jordan's administrative removal from the list because those documents are not part of the administrative record.

[7] As SprinGuard notes, the circuits that have decided this issue in the Rule 60(b) context are split. Pl. Mem. at 11 n.4. Perhaps the Federal Circuit sought to skirt this issue in light of the difficulty in defining the difference between ordinary negligence and gross negligence. See, e.g., Farmer v. Brennan, 511 U.S. 825, 836 n.4 (1994) (gross negligence is a "nebulous" term "typically meaning little different from recklessness as generally understood in the civil law").

14

Huston argued that he should not be charged with his attorney's errors because his attorney acted in a "reckless and grossly negligent" manner. Id. at 1566. The USPTO disagreed and ruled against Huston. The Federal Circuit affirmed in a decision with harsh results despite sympathetic facts. After describing some of the attorney's errors, the court stated: "Whether these are examples of bad judgment, inexperience, or lack of competence, we cannot find them to be grounds for avoidance of the rules." Id. at 1567. Had the Huston court wished to create a gross negligence exception to the Link rule, it certainly could have done so.

The outcome in SprinGuard's case is no more harsh than the outcome in Huston. The USPTO recognizes that the result of its decision in this case is austere. But that does not mean that the agency's decision was arbitrary and capricious. On the contrary, because the "decision was based on a consideration of the relevant factors" and there was no "clear error of judgment," the agency's decision was not arbitrary or capricious. Burandt v. Dudas, 528 F.3d 1329, 1332 (Fed. Cir. 2008) (affirming district court's decision that USPTO did not act arbitrarily or capriciously in holding that delay in paying maintenance fee was not unavoidable).

    **4.**    **The USPTO's Requirement that SprinGuard Satisfy the Evidentiary Burden Established by Rule 378(b)(3) Was Not Arbitrary or Capricious.**

SprinGuard argues that it was arbitrary and capricious for the USPTO to require it to comply with the evidentiary requirements of Rule 378(b)(3) because, as a result of Jordan's lack of cooperation, it was unable to provide such evidence. Pl. Mem. at 17.

The USPTO recognizes that SprinGuard tried to comply with the evidentiary requirements by investigating Jordan's practices, but because Jordan was either unable or unwilling to cooperate in that investigation, SprinGuard could not do so. But complying with

Rule 378(b)(3) is not discretionary. Instead, it is the manner in which unavoidable delay must be shown. See Ray v. Lehman, 55 F.3d 606, 609 (Fed. Cir. 1995) (holding that the requirements of Rule 378(b)(3) are "the very elements of unavoidable delay"). SprinGuard's ultimate complaint, then, is with the unavoidable-delay standard itself. But because this standard is an express mandate of the federal patent statute, the USPTO was bound to apply it in this case.

Federal patent law represents Congress's careful balance between the promotion of innovation – achieved by the grant of limited patent rights to new, useful, and nonobvious inventions – with the right of the public to freely practice unpatented ideas and technologies. See Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 146 (1989). The Supreme Court has recognized that the "free exploitation of ideas [is] the rule, to which the protection of a federal patent is the exception." Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 255 (1945). Thus, upon expiration of a patent, "the knowledge of the invention inures to the people, who are thus enabled without restriction to practice it and profit by its use." Bonito Boats, 489 U.S. at 151 (quoting United States v. Dubilier Condenser Corp., 289 U.S. 178, 186-87 (1933)). The unavoidable-delay standard represents the great importance that Congress has placed on protecting the rights of the public to practice a patent that has long expired – more than two years – for nonpayment of a maintenance fee. The unavoidable-delay standard has been described as "stringent," H.R. Rep. No. 993, 102nd Cong., 2d Sess., 2 (1992), reprinted in 1992 U.S.C.C.A.N 1623, 1624; as requiring "a heavy burden of proof" to satisfy, H.R. Rep. No. 97-542, at 8 (1982), reprinted in 1982 U.S.C.C.A.N. 765, 772; and as producing "harsh results" in its application, Femspec, L.L.C. v. Dudas, 2007 WL 216493, at *9 (N.D. Cal. Jan. 26, 2007). It is therefore this "harsh," "stringent" standard that necessitates the result in this case, not, as SprinGuard argues,

the manner in which the USPTO has applied it.  The USPTO's decision to apply "the very elements of unavoidable delay" to determine whether SprinGuard's delay was unavoidable cannot be characterized as arbitrary or capricious.  <u>Ray</u>, 55 F.3d at 609.

## CONCLUSION

The USPTO's decision not to reinstate SprinGuard's patent is in accordance with USPTO regulations and governing case law.  Therefore, it should be therefore be affirmed as not arbitrary or capricious.

Respectfully submitted,

MICHAEL K. LOUCKS
Acting United States Attorney

By:  */s/ Christine J. Wichers*
Christine J. Wichers
Assistant United States Attorney
John J. Moakly U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3278

*Of Counsel*:
Raymond Chen
Solicitor, U.S. Patent and Trademark Office

Benjamin D. M. Wood
Mary Kelly
Associate Solicitors

Dated: July 31, 2009

## Certificate of Service

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on July 31, 2009.

                */s/ Christine J. Wichers*
                Christine J. Wichers