UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-12119-RWZ

SPRINGUARD TECHNOLOGY GROUP INC.

v.

UNITED STATES PATENT AND TRADEMARK OFFICE, *et al.*

ORDER

January 21, 2010

ZOBEL, D.J.

Plaintiff SprinGuard Technology Group Inc. ("SprinGuard") is the owner of a single patent, United States Patent No. 5,862,529, entitled "Device for Protecting Face and Eyes Against Projectile Impact" (hereinafter, the "'529 Patent"). The Patent was granted in 1999 and expired in January 2003 when SprinGuard's lawyer failed to pay a required patent maintenance fee at the time it was due.

Plaintiff now invokes the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., to seek judicial review of decisions of the Director of the United States Patent and Trademark Office ("PTO") denying SprinGuard's petitions to reinstate its Patent. See Complaint (Docket # 1). In the alternative, plaintiff seeks mandamus pursuant to 28 U.S.C. § 1361 to compel the PTO to accept plaintiff's late payment and reinstate the Patent.

Defendants have moved to dismiss the complaint, or in the alternative, for summary judgment (Docket # 8). The plaintiff has cross-moved for summary judgment

(Docket # 14).

For the reasons discussed below, defendants' motion to dismiss, or in the alternative, for summary judgment is DENIED, and plaintiff's cross-motion for summary judgment is ALLOWED.

Plaintiff, in 1996, retained a lawyer licensed in Massachusetts and registered with the PTO to prosecute an application for a patent which in 1999 issued as the '529 Patent. In connection therewith, it filed a power of attorney granting the patent lawyer the power to prosecute the patent application and "to receive the patent and to transact all business in the Patent and Trademark Office connected therewith." Complaint ¶ 21. On January 26, 1999, the PTO issued the '529 Patent.

Patent holders must pay maintenance fees 3.5, 7.5, and 11.5 years after a patent is issued. See 35 U.S.C. § 41(b). Failure to pay the fees results in expiration of the patent. Id. SprinGuard's first maintenance fee (less than $1,000) was due in July 2002. In August 2002, the PTO mailed a letter to SprinGuard's attorney stating that the first maintenance fee was past due; it received no response. The fee was not paid, and the patent expired on January 27, 2003. SpringGuard was not notified that it had failed to pay the fee, nor given notice that the Patent had expired. It did not learn of the Patent's expiration until almost four years later, in 2006, during a due diligence review by a third-party licensee.

During this time period, SprinGuard's patent lawyer had allowed his registration with the PTO to lapse. The PTO had removed the attorney from the Register of Patent Attorneys and Agents on December 9, 2002, pursuant to regulation due to the

attorney's failure to respond to routine correspondence. He was not reinstated until March 23, 2004. The PTO never notified SprinGuard that its attorney had been removed from the register.

## I. Procedural History

Upon learning of the Patent's expiration in 2006, SprinGuard immediately paid the maintenance fee, and took steps (including hiring a private investigator) to locate its attorney. For some reason still unknown with any certainty by either party, the lawyer became incommunicado. He did not respond to SprinGuard's correspondence, did not answer telephone phone calls and faxes, and did not answer the door at his residence. He was eventually disbarred in an uncontested proceeding because of his failure to cooperate in a separate disciplinary investigation.

Plaintiff then, in December 2006, filed a petition to reinstate its Patent on the ground that the delay in paying the first maintenance fee, due in 2003, was "unavoidable." 35 U.S.C. § 41(c)(1). The PTO denied the petition in March 2007 because it concluded that plaintiff failed to adduce sufficient evidence that it took reasonable steps to ensure that the maintenance fee would be paid on time. In its denial, the PTO stated that:

> [A]ny showing of unavoidable delay must include a statement from petitioners' former patent attorney ... as well as any other attorney(s) of record during the period that payment of the maintenance fee was delayed, as to why action was not taken to timely submit the required maintenance fee while the patent was under that agent's control.

(Docket # 1) Complaint ¶ 46 & Exhibit E at 3-4 (Decision on Petition dated Mar. 12, 2007). The PTO also reasoned that "the failure of communication between an

applicant and counsel is not unavoidable delay." Id. at 4.

SprinGuard filed a request for reconsideration on May 11, 2007, in which it detailed its fruitless efforts to reach the attorney. See (Docket # 1) Complaint ¶ 49 & Exhibit F at 7-10. The request was denied on August 10, 2007, on the ground that "petitioners have not provided the requisite showing of the steps taken by the responsible party to ensure the timely payment of the first maintenance fee." (Docket # 1) Complaint ¶ 54 & Exhibit G at 5. The PTO further concluded that "while the office acknowledges [SprinGuard's] efforts to contact [its former attorney], the failure of that attorney to provide a showing of steps taken to ensure timely payment of the maintenance fee does not constitute unavoidable delay." Id.

SprinGuard then filed a second petition for reconsideration under 37 CFR § 1.181(a)(3) (Petition to Invoke Supervisory Authority of the Director), which was denied on March 17, 2008, on the ground that SprinGuard had already exhausted its administrative remedies and that PTO regulations precluded further review. (Docket # 1) Complaint ¶ 58 & Exhibit H at 2-5; Exhibit I at 1-3. The instant appeal followed.

## II. Standard of Review under the APA

The PTO's denial of a petition to accept a late payment of maintenance fees is reviewable under the APA. The PTO's decision will be set aside if the agency's "action, findings, and conclusions [are] found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

## III. Legal Analysis

Payment of patent maintenance fees is governed by statute. See 35 U.S.C. §

41. Under 35 U.S.C. § 41(c)(1), a patent holder who fails to make a timely payment is entitled to reinstatement of a patent if it demonstrates that the delay in payment of the maintenance fees was "unavoidable."[1] While the statute does not define the term, the PTO has promulgated regulations to aid in the interpretation of the statute. For example, one PTO regulation provides:

> Any petition to accept an unavoidably delayed payment of a maintenance fee filed under paragraph (a) of this section must include:
>
> (b) (1) The required maintenance fee set forth in § 1.20 (e) through (g);
> (2) The surcharge set forth in § 1.20(i)(1); and
> (3) A showing that the delay was unavoidable since reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent. The showing must enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly.

37 C.F.R. §1.378(b) (emphasis added).

Here, plaintiff argues that its failure to pay the maintenance fee was

---

[1] That section provides:

> "(c)(1) The Director may accept the payment of any maintenance fee required by subsection (b) of this section which is made within twenty-four months after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unintentional, or at any time after the six-month grace period if the delay is shown to the satisfaction of the Director to have been unavoidable. The Director may require the payment of a surcharge as a condition of accepting payment of any maintenance fee after the six-month grace period. If the Director accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired at the end of the grace period."

35 U.S.C. § 41(c)(1) (emphasis added).

"unavoidable" given its lack of knowledge of counsel's dereliction and the PTO's failure to notify it. As a general matter, the PTO, citing Link v. Wabash R.R. Co., 370 U.S. 626 (1962), has taken the position that reliance on the fact that one has hired an attorney without further diligence is insufficient; rather, patent holders have an affirmative obligation to exercise reasonable care that maintenance fees are paid. See Link, 370 U.S. 626 (1962) (upholding the dismissal of a suit for failure to prosecute based on the failure of plaintiff's counsel to appear at a pretrial conference). However, the PTO has itself excused late payment where the attorney completely abandoned the attorney-client relationship. See, e.g., In re Patent No. 6,000,448 (Mar. 21, 2006) (Docket # 17, Decl. of Donald R. Steinberg in support of Pl.'s Cross-Mot. for Summ. Judgment, Ex. X) (finding unavoidable delay where the patent holder had not paid the maintenance fee, was unaware of his obligation to do so, and could not locate his attorney during the relevant time period). Moreover, courts have indicated that the actions of an attorney who is grossly negligent, in contradistinction to merely negligent, will not be imputed to his or her client. See Community Dental Servs. v. Tani, 282 F.3d 1164, 1168 (9th Cir. 2002).[2] Here, given counsel's complete abandonment of his client, including his total refusal (or inability) to cooperate or communicate, plaintiff was precluded from producing competent evidence of such due diligence. In this unique circumstance,

[2] The First Circuit has expressed agreement with this principle, albeit in dicta. See Greenspun v. Bogan, 492 F.2d 375, 382 (1st Cir.1974). This court need not resolve the issue of whether there is an exception where the attorney is grossly negligent, nor whether the attorney's conduct here was negligent or grossly negligent. Rather, where, as here, the attorney completely abandoned the attorney-client relationship, relief lies.

SprinGuard has met the standard.

In addition, it is significant that SprinGuard's lawyer had been removed from the list of registered patent attorneys at the time the '529 Patent expired for failure to pay the maintenance fee. While he could technically make the payment, as he had not been formally suspended or disbarred from the register, he was no longer able to act as SprinGuard's patent attorney. Moreover, SprinGuard was not given notice that its patent counsel had been de-registered. The PTO has allowed delayed payment in several such cases. <u>See</u>, <u>e.g.,</u> <u>In re Patent No. 6,000,448</u> (Mar. 21, 2006) (Docket # 17, Ex. 7) (finding unavoidable delay where the patent holder had not paid the maintenance fee, was unaware of his obligation to do so, and could not locate his attorney during the relevant time period); <u>see</u> <u>also</u> <u>In re Patent No. 6,160,836</u> (Apr. 2, 2007) (Docket # 17, Ex. 5) (PTO found unavoidable delay where patent holder's attorney failed to forward the required payment to the PTO, and had been suspended from practicing before the PTO; reasoned "[g]iven the facts and circumstances of this case, <u>in particular the suspension of petitioner's prior attorney</u>, it is concluded that petitioner, has established that the delayed payment of the maintenance fee was unavoidable") (emphasis added); <u>In re Patent No. 5,455,569</u> (Mar. 4, 2003) (Docket # 17, Ex. 4) (concluding that the patent holder had demonstrated unavoidable delay); and <u>In re Patent No. 5,125,742</u> (Feb. 25, 1999) (Docket # 17, Ex. 6) (same).

Moreover, the PTO sent notice of SprinGuard's failure to pay the maintenance fee, as well as notice of the '529 Patent's expiration, to counsel, who was then no longer registered with the PTO — <u>not</u> to SprinGuard.

Given the unique circumstances of this case, and the decisions of the PTO in favor of patent holders in similar circumstances, I conclude the PTO's decision was arbitrary and otherwise contrary to law.

## IV. Conclusion

Defendants' motion to dismiss, or in the alternative, for summary judgment (Docket # 8) is DENIED, and plaintiff's cross-motion for summary judgment (Docket # 14) is ALLOWED.

Judgment may be entered granting the relief requested.

January 21, 2010
DATE

/s/Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE